U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

FEB 0 5 2015

CHRIS R. JOHNSON, Clerk
By _____
Deputy Clerk

ALYSSA CLEMMONS, individually and on
behalf of all others similarly situated,

                          Plaintiff,

          -against-

GENERAL NUTRITION CORPORATION,
GENERAL NUTRITION CENTERS, INC. and
GNC HOLDINGS, INC.

                          Defendants.

**CLASS  ACTION COMPLAINT**

Case No. _15-5036_

**JURY TRIAL DEMANDED**

Plaintiff, Alyssa Clemmons, brings this lawsuit against Defendants General Nutrition Corporation, General Nutrition Centers, Inc. and GNC Holdings, Inc. (collectively "GNC" or "Defendants").  In order to remedy the harm arising from Defendants' illegal conduct which has resulted in unjust profits, Plaintiff brings this action on behalf of Plaintiff and a nationwide class of consumers who, within the last five years, purchased the mislabeled herbal supplements referred to herein as (the "Purchased Products" and/or "Mislabeled Products").

### DEFINITIONS

1.     "Class Period" is February 5, 2010 to the present.

2.     Over the last five years, Plaintiff, Alyssa Clemmons, has purchased Herbal Plus Gingko Biloba, Herbal Plus St. John's Wort, Herbal Plus Ginseng and Herbal Plus Echinacea (the "Purchased Products").  Pictures of the Purchased Products are attached at Exhibit "1."

3.      "Mislabeled Herbal Products" are the Purchased Products identified herein.

4.     The Mislabeled Herbal Products were mislabeled because they failed to contain the medicinal herbs represented by the label.

5.     The issue in this case is the false label representations and/or misrepresentations on the labels of the Misbranded Herbal Products.

## PARTIES

6.      Plaintiff, Alyssa Clemmons, is a resident of Bella Vista, Benton County, Arkansas who purchased the Purchased Products during the five (5) years prior to the filing of this Complaint (the "Class Period").

7.      Defendant, General Nutrition Corporation, is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania doing business in the State of Arkansas.

8.      Defendant, General Nutrition Centers, Inc., is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania doing business in the State of Arkansas.

9.      Defendant, GNC Holdings, Inc., is a Pennsylvania corporation with its principal place of business in Pittsburgh, Pennsylvania doing business in the State of Arkansas.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) a member of the class of plaintiffs is a citizen of a State different from a defendant; and (3) the number of members of the Class in the aggregate is greater than 100.

11.     The Court has personal jurisdiction over Defendants because the wrongdoing alleged herein occurred in Arkansas.  Defendants also have sufficient minimum contacts with Arkansas and has otherwise intentionally availed itself of the markets in Arkansas through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to these claims occurred in this District, a substantial part of the property that is the subject of this action is situated in this District, and

Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

13.     GNC has manufactured, labeled and sold, during the Class Period, GNC "Herbal Plus" brand dietary supplement products defined herein as "Mislabeled Herbal Products."

14.     The GNC "Mislabeled Herbal Products" prominently identified the primary herbal dietary ingredient as "Gingko Biloba," "St. John's Wort," "Ginseng" and "Echinacea."

15.     Plaintiff reasonably relied on the labels of the Misbranded GNC "Herbal Plus" Products. That is, when Plaintiff purchased GNC "Herbal Plus" Gingko Biloba, she believed she was purchasing a product containing primarily Gingko Biloba; when Plaintiff purchased GNC "Herbal Plus" Ginseng, she believed she was purchasing a product containing primarily Ginseng; when Plaintiff purchased GNC "Herbal Plus" Echinacea, she believed she was purchasing a product containing primarily Echinacea; and when Plaintiff purchased GNC "Herbal Plus" St. John's Wort, she believe she was purchasing a product containing primarily St. John's Wort.

16.     In reality, Defendants' herbal supplements are not what they purport to be. Specifically, GNC "Herbal Plus" Gingko Biloba contains no gingko biloba, but instead contains oryza (rice) and/or allium (garlic), among other substances; GNC "Herbal Plus" St. John's Wort product contains no St. John's Wort, but instead contains oryza, allium, and/or dracaena (a tropical house plant); GNC "Herbal Plus" Ginseng contains no ginseng, but instead contains, among other substances, oryza, dracaena, and/or pinus strobus (white pines); and GNC "Herbal Plus" Echinacea contains no echinacea, but instead contains pine and/or ranunculaceae (flowering plans from the buttercup family), or no plant substances at all.

17.     In other words, while Defendants purport to sell their customers herbal supplements, the supplements are a sham, containing none of the active ingredient promised in the product's name and on the label.

3

18.     The adulterated and misbranded GNC "Herbal Plus" Products are worthless.

19.     A reasonable purchaser would believe that Defendants' products did in fact contain the ingredients listed on the labels.

20.     A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Gingko Biloba actually contained Gingko Biloba.

21.     A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" St. John's Wort actually contained St. John's Wort.

22.     A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Ginseng actually contained Ginseng.

23.     A reasonable purchaser would believe that Defendants' GNC "Herbal Plus" Echinacea actually contained Echinacea.

24.     Plaintiff reasonably relied on Defendants' package labeling of its Misbranded GNC "Herbal Plus" Products.

25.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' Misbranded GNC "Herbal Plus" Products were misbranded and adulterated as set forth herein. Plaintiff would not have bought the Misbranded GNC "Herbal Plus" Products had she known the truth that the products contained none of the ingredients listed on the front of package label.

26.     As a result of Defendants' misrepresentations of content, Plaintiff and thousands of other consumers purchased the products at issue.

27.     Defendants' labeling as alleged herein is false and misleading and designed to increase sales of the products at issue.

28.     The "Mislabeled Herbal Products" do not contain the primary herbal dietary ingredient represented on the products' labels, such as "Gingko Biloba," "St. John's Wort,"

"Ginseng" and "Echinacea."

29.     The Attorney General for the State of New York has served upon GNC a Cease and Desist Notification demanding that GNC immediately stop the sale of the Mislabeled Herbal Products.  A copy of the Cease and Desist Notification is attached as Exhibit "2."

30.     GNC falsely manufactured, labeled and sold the "Mislabeled Herbal Products." The "Mislabeled Herbal Products" have no monetary value and are worthless.

31.     Plaintiff and the Class relied upon the representations on the products' labels to their detriment.

32.     Plaintiff and the Class have been damaged by the false and deceptive labeling on the Mislabeled Herbal Products.  Plaintiff and the Class are entitled to a return of the purchase price paid for the worthless Mislabeled Herbal Products.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to the Arkansas Rule of Procedure 23 on behalf of the following class:

> All persons who purchased Herbal Plus Gingko Biloba, Herbal Plus St. John's Wort, Herbal Plus Ginseng and Herbal Plus Echinacea in the United States, since February 5, 2010. (the "Class").

34.     The following persons are expressly excluded from each Class:  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

35.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

36.     Numerosity:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the hundreds, and that joinder of all Class members is impracticable.

37.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include:

a.      Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly label its products it sold to consumers;

b.      Whether the products at issue were mislabeled as a matter of law;

c.      Whether Defendants made unlawful and misleading herbal representations and warranties with respect to its products sold to consumers;

d.      Whether Defendants violated the Arkansas Deceptive Trade Practices Act (A.C.A. § 4-88-101, *et. seq.*);

e.      Whether Defendants breached its implied warranty of merchantability;

f.      Whether Defendants breached its express warranties;

g.      Whether Defendants were negligent in its labeling and advertising of the Purchased Products;

h.      Whether Defendants unlawfully sold the Mislabeled Herbal Products in violation of the laws of Arkansas;

i.      Whether Defendants' unlawful, unfair and deceptive practices harmed Plaintiff and the Class;

j.      Whether Plaintiff and the Class have been damaged by the unlawful actions of the Defendants and the amount of damages to the Class;

k.      Whether Defendants were unjustly enriched by its deceptive practices;

l.      Whether punitive damages should be awarded; and

m.      Whether Defendants should be enjoined from continuing the conduct complained of herein.

38.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of each Class because Plaintiff bought Defendants' Mislabeled Herbal Products during the Class Period. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and each Class sustained similar injuries arising out of Defendants' conduct in violation of Arkansas law.

The injuries of each member of each Class were caused directly by Defendants' wrongful conduct. In addition, the factual underpinning of Defendants' misconduct is common to all Class members of each class and represents a common thread of misconduct resulting in injury to all members of each Class. Plaintiff' claims arise from the same practices and course of conduct that give rise to the claims of each member of the Class and are based on the same legal theories.

39.     Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiff has retained competent and experienced class action attorneys to represent their interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the members of the class and will diligently discharge those duties by seeking the maximum possible recovery for the Class.

40.     Superiority:  There is no plain, speedy or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of each Class member's rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class treatment of common questions of law and fact would also be superior to multiple individual

actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

41.   <u>Predominance</u>:  The prerequisites to maintaining a class action pursuant to ARK. R. CIV. P. 23 are met as questions of law or fact common to each class member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

42.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Violation of A.C.A. § 4-88-101 et seq.)

43.   Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

44.   Defendants' conduct constitutes unlawful deceptive and unconscionable trade practices. Defendants' conduct was consumer-oriented and this conduct had broad impact on consumers at large. Defendants engaged in false, misleading and unlawful advertising, marketing and labeling of Defendants' Mislabeled Herbal Products. Defendants' manufacturing, distribution and sale of Defendants' Mislabeled Herbal Products were similarly unlawful.

45.   Defendants unlawfully sold Defendants' Mislabeled Herbal Products in Arkansas during the Class Period.

46.   As fully alleged above, by advertising, marketing, distributing and selling mislabeled and misbranded Defendants' Mislabeled Herbal Products to Plaintiff and other members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas, Defendants engaged in, and continue to engage in, unlawful deceptive and unconscionable trade

practices.

47.     Defendants' misleading marketing, advertising, packaging and labeling of Defendants' Mislabeled Herbal Products were likely to deceive reasonable consumers.

48.     Plaintiff and other members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas were deceived.

49.     Defendants have engaged in unlawful deceptive and unconscionable trade practices.

50.     Plaintiff and other members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas were injured by Defendants' unlawful deceptive and unconscionable trade practices.

51.     Defendants' fraud and deception caused Plaintiff and other members of the Class to purchase Defendants' Mislabeled Herbal Products that they would otherwise not have purchased had Plaintiff known the true nature of these products.

52.     Plaintiff and other members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas were injured as a result of Defendants' unlawful deceptive and unconscionable trade practices.

53.     Defendants sold to Plaintiff and the members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas, a product that had no economic value. Defendants' violation of A.C.A. §§ 4-88-107 and 4-88-108 remains ongoing.

54.     As a direct and proximate cause of Defendants' violation of A.C.A. §§ 4-88-107 and 4-88-108, Plaintiff and the members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas were injured when they paid for this illegal and worthless products. Plaintiff and the members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas have been damaged in an amount to be determined at trial.

55.     As a result of Defendants' unlawful deceptive and unconscionable trade practices,

Plaintiff and the members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas, pursuant to A.C.A. § 4-88-113 and A.C.A. §§ 4-88-107 and 4-88-108, are entitled to damages and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and the members of the Class who purchased Defendants' Mislabeled Herbal Products in Arkansas any money paid for Defendants' Mislabeled Herbal Products.

56.     The conduct described above constitutes unfair or deceptive trade practices predominately and substantially affecting the conduct of trade or commerce throughout the United States in violation of the Arkansas Deceptive Trade Practice Act, Ark. Code Ann. § 4-88-101, *et. seq.* and other similar state statutes prohibiting unfair and deceptive acts and practices (collectively "DTPA").  Other similar state statutes include:

| | |
|---|---|
| Alabama: | Ala. Code §8-19-5 |
| Alaska: | Alaska Stat. §45-50-471, et seq. |
| Arkansas: | Ark. Code Ann. §4-88-101, et seq. |
| Arizona: | Ariz. Rev. Stat. §44-1522, et seq. |
| California: | Cal. Civ. Code §§1780 – 1784, Business and Profession Code §1720, et seq., §1750, et seq. |
| Connecticut: | Conn. Gen. Stat. Ann. §§42-110a – 42-110g |
| Colorado: | Col. Rev. Stat. §§6-1-101 – 6-1-114 |
| Delaware: | 6 Del. Code. Ann. §§2511 – 2537 |
| District of Columbia: | D.C. Code Ann. §§28-3801 – 28-3819 |
| Florida: | Fla. Stat. Ann. §§501.201 – 501.213 |
| Georgia: | Ga. Stat. §10-1-393, et. seq. |
| Hawaii: | Hawaii Rev. L. §§480-1 – 480-24 |
| Idaho: | Idaho Code §§48-601 – 48-619 |
| Illinois: | 815 IL CS 505/2 |
| Indiana: | Ind. Code §24-5-0.5, et. seq. |
| Iowa: | Iowa Code §714.16 |
| Kansas: | Kan. Gen. Stat. Ann. §§50-623 – 50-644 |
| Kentucky: | Ky. Rev. Stat. Ann. §§367.110 – 367.990 |
| Louisiana: | La. Rev. Stat. Ann. §§13:1401 – 13:1418 |
| Maine: | Me. Rev. Stat. Ann. §§206 – 214 |
| Maryland: | Md. Code Ann. §§13-501 |
| Massachusetts: | Mass. Gen. L. Ann. Ch. 93A. §§1-11 |
| Michigan: | Mich. Stat. Ann. §19.418(B) |
| Minnesota: | Minn. Stat. Ann. §§325D.09 – 325D.16 |

| | |
|---|---|
| Mississippi: | Miss. Code §75-24-5, et. seq. |
| Missouri: | Mo. Ann. Stat. §§407.010 – 407.701 |
| Montana: | Mont. Rev. Code Ann. §§30-14-101 – 30-14-224 |
| Nebraska: | Neb. Rev. Code §§59-1501 – 59-1623 |
| Nevada: | Nev. Rev. Stat. §§590A.010 – 590A.280 |
| New Hampshire: | N.H. Rev. Stat. Ann. §358-A:2 |
| New Jersey: | N.J. Rev. Stat. §§56:8-1 – 56:8-24 |
| New Mexico: | N.M. Stat. Ann. §57-12-10 |
| New York: | N.Y. Gen. Bus. L. §§349 - 350 |
| North Carolina: | N.C. Gen. Stat. §§75-1 – 75-56 |
| North Dakota: | N.D. Cent. Code §51-15-02 |
| Ohio: | Ohio Rev. Code Ann. §1345 |
| Oklahoma: | Okla. Stat. Tit. 15 §753 |
| Oregon: | Ore. Rev. Stat. §§646.605 – 646.642 |
| Pennsylvania: | 73 Pa. Stat. §201, et se. |
| Rhode Island: | R.I. Rev. L. Ann. §§6-13.1-1 – 6-13.1-11 |
| South Carolina: | S.C. Code §39-5-20, et. seq. |
| South Dakota: | S.D. Comp. L. §§37-24-1 37-24-35 |
| Tennessee: | Tenn. Code Ann. §47-18-101 et seq. |
| Texas: | Tex. Rev. Civ. Stat. §§17.41 –17.63 |
| Utah: | Utah Code Ann. §13-11-19 |
| Vermont: | Vt. Stat. Ann. §§2451 – 2462 |
| Virginia: | Va. Code §59.1-200, et. seq. |
| Washington: | RCW §19-86-010, et seq. |
| West Virginia: | W. Va. Code Ann. §46A-6-104 |
| Wisconsin: | Wis. Stat. Ann. §100.18 |
| Wyoming: | Wyo. Stat. §40-12-105, et.seq. |

57.    As approximate results of the Defendants' deceptive trade practices, the Plaintiff and the members of the class have suffered actually damages in an amount to be proven at trial.

58.    Defendants' conduct complained of herein renders it liable under the states' DTPAs for damages for the consequences of such conduct.

59.    Defendants' actions were willful, wanton, malicious, and in total disregard for the rights of the Plaintiff and Class Members.  Defendants knew or should have known, in light of the surrounding circumstances that their conduct in violation of states' Deceptive Trade Practices Acts would naturally and probably result in damages to Plaintiff and Class Members.  Defendants continued its wrongful conduct with malice or in reckless disregard of the consequences, from which malice may be inferred.  Further, Defendants intentionally pursued its course of conduct

for the purpose of causing Plaintiff and Class Members damages. Punitive damages should be awarded to deter the actions of Defendants and others who might engage in similar action or conduct.

60.     Plaintiff and Class Members are entitled to any and all penalties and/or multipliers of damages as may be provided for in the states' DTPAs.

61.     Plaintiff and Class Members are entitled to an award of reasonable attorneys' fees, costs of this action, plus pre and post judgment interest as may be allowed by law.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

62.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

63.     As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiff and the Class through the payment of the purchase price for the Mislabeled Herbal Products.

64.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from the Plaintiff and the Class, in light of the fact that the Mislabeled Herbal Products purchased by Plaintiff and the Class were illegal products and were not what Defendants represented them to be. Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to the Plaintiff and the Class for the monies paid to Defendants for the Mislabeled Herbal Products.

## THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

65.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

66.     Implied in the purchase of the Mislabeled Herbal Products by Plaintiff and the

Class is the warranty that the purchased products are legal and can be lawfully sold and possessed.

67.     Defendants knowingly and intentionally mislabeled their Mislabeled Herbal Products.

68.     Defendants knew those Mislabeled Herbal Products were unlawful.

69.     When Defendants sold this product it impliedly warranted that the products were legal and could be lawfully possessed and/or sold and therefore, merchantable.

70.     Plaintiff would not have knowingly purchased a product that was illegal to own or possess.

71.     No reasonable consumer would knowingly purchase a product that is illegal to own or possess.

72.     The purchased Mislabeled Herbal Products were unfit for the ordinary purpose for which Plaintiff and the Class purchased them.

73.     In fact, this Mislabeled Herbal Products were illegal, mislabeled, and economically worthless.

74.     As a result, Plaintiff and the Class were injured through their purchase of unsuitable, useless, illegal and unsellable products.

75.     By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Mislabeled Herbal Products.

76.     Notice of the Breach of Warranty is being provided to Defendant.

## FOURTH CAUSE OF ACTION
### (Breach of Express Warranty)

77.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

78.     Defendants' representations of fact and/or promises on the labels relating to their

Mislabeled Herbal Products created express written warranties that the product would conform to Defendants' representation of fact and/or promises.

79.     The Defendants' descriptions of their Mislabeled Herbal Products became part of the bases of the bargains, creating express written warranties that the product purchased by Plaintiff and the other Class Members would conform to Defendants' descriptions and specifications. The Mislabeled Herbal Products purchased by Plaintiff did not so conform.

80.     Defendants provided warranties that its Mislabeled Herbal Products were labeled in compliance with state law and were not mislabeled under state law. Defendants breached these express written warranties.

81.     As a result of the foregoing, Plaintiff and the other Class Members have suffered damages, in that the value of the product they purchased was less than warranted by Defendant.

82.     Defendants engaged in a scheme of offering the Mislabeled Herbal Products for sale to Plaintiff and members of the Class by way of, inter alia, false and misleading product packaging and labeling.

83.     Plaintiff and the Class were the intended GNCs of such representations and warranties.

84.     Plaintiff and the Class reasonably relied on Defendants' representations and warranties.

85.     Plaintiff asserts this cause of action for violations of Arkansas law pertaining to express warranties. Plaintiff and the Class were injured as a result of Defendants' breach of their express warranties about the Mislabeled Herbal Products. Plaintiff and the Class are entitled to damages arising from the breach of warranty.

86.     Notice of the Breach of Warranty is being provided to Defendant.

14

## FIFTH CAUSE OF ACTION
### (Negligence)

87.     Plaintiff repeats and realleges each of the above allegations as if fully set forth herein.

88.     In making representations of fact to Plaintiff and the other Class members about their Mislabeled Herbal  Products, Defendants failed to lawfully label or advertise their Mislabeled Herbal Products and violated their duties to disclose the material facts alleged above. Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendant.

89.     Plaintiff and the other Class members, as a direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such representations to their detriment.  By reason thereof, Plaintiff and the other Class members have suffered damages.

90.     As described above, Defendants' actions violated a number of express statutory provisions designed to protect Plaintiff and the Class. Defendants' illegal actions constitute negligence per se. Moreover, the statutory food labeling and misbranding provisions violated by Defendants are strict liability provisions.

91.     As alleged above, Plaintiff and the Class were injured by Defendants' unlawful actions and are entitled to recover an amount to be determined at trial due to the injuries and loss they suffered as a result of Defendants' negligence.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of their claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated persons, prays for judgment against Defendants as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and

15

Plaintiff's counsel to represent the Class;

   B.  For an order awarding, as appropriate, damages, restitution, or disgorgement to

Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled;

   C.  For an order awarding pre-judgment and post-judgment interest;

   D.  For attorneys' fees and costs;

   E.  Award punitive damages in an appropriate amount; and

   F.  Enter an injunction permanently barring continuation of the conduct complained of
herein.

Dated:  February 5, 2015.     Respectfully submitted,

Kenneth R. Shemin, ABA No. 78138
**SHEMIN LAW FIRM, PLLC**
3333 Pinnacle Hills Parkway, Suite 603
Rogers, AR 72758
Telephone:  (479) 845-3305
Facsimile:  (479) 845-2198

Thomas P. Thrash (ABA No. 80147)
Marcus N. Bozeman (ABA No. 95287)
**THRASH LAW FIRM, P.A.**
1101 Garland Street
Little Rock, AR 72201
Telephone:  (501) 374-1058
Facsimile:  (501) 374-2222

Dewitt M. Lovelace
Valerie Lauro Nettles
**LOVELACE AND ASSOCIATES, PA**
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone:      (850) 837-6020
Facsimile:      (850) 837-4093

Charles J. LaDuca
**CUNEO GILBERT & LADUCA, LLP**
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813

Taylor Asen
**CUNEO GILBERT & LADUCA, LLP**
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813

Ben F. Pierce Gore (SBN 128515)
**PRATT & ASSOCIATES**
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Facsimile:  (408) 369-0752

Richard R. Barrett
**Law Office of Richard R. Barrett, PLLC**
2086 Old Taylor Road, Suite 1011
Oxford, Mississippi 38655
Telephone: 662-380-5018
Facsimile: 866-430-5459

Don Barrett
**DON BARRETT, P.A.**
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Facsimile: (662) 834-2628

*Attorneys for Plaintiff*